UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                          Case No: 03-80244
                                                    Honorable Victoria A. Roberts

v.

MARCO ANTONIO PAREDES-MACHADO,

    Defendant.
_____/

**ORDER: (1) OVERRULING DEFENDANT'S OBJECTION [ECF No. 915];
(2) ADOPTING THE REPORT AND RECOMMENDATION [ECF No. 910]; AND
(3) DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [ECF No. 885]**

**I.    INTRODUCTION & BACKGROUND**

Defendant Marco Antonio Paredes-Machado ("Paredes-Machado"), a Mexican national extradited to the United States, is charged with Conspiracy to Distribute and Conspiracy to Import More Than 1,000 Kilograms of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952, 960(a)(1), and 963.

On November 15, 2018, Paredes-Machado filed a motion to dismiss the indictment. He argues dismissal is appropriate due to "outrageous government conduct" that took place after his arrest in Mexico. [ECF No. 885]. Paredes-Machado alleges that the Mexican officers who arrested him tortured him and his wife before turning him over to United States agents.

It is undisputed that the United States was involved in the investigation leading up to Paredes-Machado's arrest, and that the underlying arrest was pursuant to a U.S. warrant. Paredes-Machado says the Mexican officers were essentially "agents" of the

United States because they worked in a unit that received training, funding, and at least some oversight by the U.S. He says the United States knew or should have known that Mexican officers would torture him when it asked Mexico to apprehend him. Paredes-Machado says this makes the government's conduct shocking to the conscience and in violation of the Due Process Clause of the Fifth Amendment.

The Court referred the motion to Magistrate Judge David R. Grand for a report and recommendation ("R&R"). Judge Grand held a hearing on February 4, 2019.

On March 28, 2019, Magistrate Judge Grand issued an R&R. [ECF No. 910]. He recommends DENYING the motion, finding that, although Paredes-Machado's allegations "raise serious concerns about his treatment by the Mexican arresting officers, some of whom may have received training and funding from the United States government, dismissal of the criminal charges against him is not an available remedy for any such abuse." The magistrate judge relies on well-established case law.

Paredes-Machado's objections are fully briefed.

As Paredes-Machado acknowledges, the R&R is based on a purely legal issue – i.e., whether, accepting as true his allegations, the outrageous government conduct defense is available to him. Except for one minor objection, Paredes-Machado accepts the R&R's recitation of facts. Accordingly, except for the one fact objected to – which is discussed below – the Court accepts the facts set forth in the R&R and incorporates them by reference.

The Court reviewed the parties' briefs and the record. It makes a *de novo* determination of the parts of the R&R to which Paredes-Machado objects, and finds that Paredes-Machado is not entitled to dismissal of the indictment.

Accordingly, the Court **OVERRULES** Paredes-Machado's Objection, **ADOPTS** the R&R, and **DENIES** Paredes-Machado's motion to dismiss the indictment.

## II. STANDARD OF REVIEW

When a party properly objects to portions of a magistrate judge's report and recommendation, the Court reviews such portions *de novo*. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). However, only specific objections that pinpoint a source of error in the report are entitled to *de novo* review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Parties may not raise new arguments in their objections or issues that were not presented to the magistrate judge. *Murr v. United States*, 200 F.3d 895, 902 (6th Cir. 2000). *See also United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")).

## III. DISCUSSION

### A. Factual Findings

Paredes-Machado makes one objection to the R&R's factual findings: "The Report states, 'Although Paredes-Machado believes he was arrested by Mexican federal agents, none showed identification, and all were dressed in civilian clothing.' [R&R 3.] In reality, the Defense has deposed some of those agents in Mexico, and they admitted to their participation. [Doc. #885, Ex. N.]." [ECF No. 915, PageID. 4839 n.1].

The Court acknowledges this objection and MODIFIES the R&R to remove the words "believes he" from the above sentence. *See* 28 U.S.C. § 636(b)(1) (a district judge "may accept, reject, or modify, in whole or in part, the findings or

3

recommendations made by the magistrate judge"). The sentence will now read: "Although Paredes-Machado was arrested by Mexican federal agents, none showed identification, and all were dressed in civilian clothing."

B.     **Legal Conclusions**

In the R&R, Magistrate Judge Grand concluded that "the 'outrageous government conduct' defense is unavailable to Paredes-Machado because the government conduct in question is in no way intertwined with the criminal activity for which he is charged, and the government has agreed not to use at trial any evidence obtained as a result of the challenged conduct." In reaching that conclusion, Judge Grand held that: (1) "[t]o the extent courts have applied the [outrageous government conduct] doctrine at all, they have done so only where the government participated in the underlying criminal activity in an 'outrageous' manner, yet without that participation constituting 'entrapment'"; and (2) "there is no dispute that the challenged government conduct is wholly unconnected to Paredes-Machado's alleged criminal activity." Accordingly, he found that "even if the United States knew, generally, of accusations of wide-spread use of torture by Mexican authorities, and even if Paredes-Machado's allegations of torture are indeed true, . . . the law simply does not support his request to dismiss the indictment."

Paredes-Machado says the magistrate judge misconstrued his argument, resulting in legal error. Specifically, he says the R&R: (1) "fails to [] distinguish between the two principles underlying the right to due process—fairness and decency—as laid out in *Rochin v. California*, 342 U.S. 165 (1952)"; (2) fails to "recognize that, although dismissal is not a remedy for inducement arguments related to 'fairness,' that remedy is

available for violations of basic decency"; (3) "incorrectly characterizes [his] argument as an inducement/fairness issue; and (4) "fails to apply the proper constitutional law regarding the due process prohibition against shocking, egregious, and brutal violations of the principle of decency."

In attempting to show that the magistrate judge made a legal error, Paredes-Machado changes his argument from one based on the "outrageous government conduct" defense and the Due Process Clause generally, to one based on the due process principle of decency. In doing so, Paredes-Machado argues for the first time that the Supreme Court created distinct principles of fairness and decency in *Rochin*. While Paredes-Machado criticizes the magistrate judge for "fail[ing] to [] distinguish between the two principles underlying the right to due process—fairness and decency," he did not do so in his briefs before the magistrate judge. Notably, Paredes-Machado only uses the word "decency" three times in his motion and reply brief (twice in a block quote and once in a sentence paraphrasing the quote). In contrast – now as he reframes his argument for objection purposes – Paredes-Machado uses the word "decency" over thirty times in his objection and an additional 20 times in his reply brief. Moreover, Paredes-Machado cites to over 20 new cases in his objection that were not in his briefs before the magistrate judge.

This is improper. "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge." *Marr v. Foy*, No. 1:07-CV-908, 2010 WL 489535, at *6 (W.D. Mich. Feb. 4, 2010) (citing *Murr*, 200 F.3d at 902 n.1). "The Magistrates Act was not intended 'to give litigants an opportunity to run one version of their case past

the magistrate [judge], then another past the district court."  *Id.* (citations and quotation marks omitted); *Murr*, 200 F.3d at 902 n.1.

Because Paredes-Machado failed to raise his argument based on the distinct principle of decency before the magistrate judge and only now distinguishes between the principles of fairness and decency, the Court deems his arguments based on the distinct principle of decency waived.  *See Murr*, 200 F.3d at 902 n.1.  Notwithstanding the waiver, Paredes-Machado's arguments fail.

In arguing that he is entitled to dismissal of the indictment, Paredes-Machado relies principally on three cases: *Rochin*; *United States v. Russell*, 411 U.S. 423 (1973); and *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974).

Paredes-Machado says *Rochin* – which discussed the principles underlying the right to due process – distinguished between the principles of fairness and decency, and that the principle of decency authorizes the dismissal of an indictment for government action that "shocks the conscience."  Paredes-Machado says *Russell* explains that dismissal of the indictment is the appropriate remedy for a violation of the principle of decency; and, he says *Toscanino* provides an example of when to apply that remedy—torture.

Paredes-Machado's reliance on these cases is unavailing.  As the magistrate judge correctly found, these cases do not provide Paredes-Machado with the relief he requests.

In *Rochin,* the Supreme Court vacated the defendant's conviction for drug possession and reversed the lower court's admission of the drugs where officers broke into the defendant's house without a warrant, attempted to forcibly remove pills from his

throat, and took him to a hospital and had his stomach pumped against his will.  *Rochin*, 342 U.S. at 166, 174.  Over the defendant's objection, the government used the capsules removed from his stomach to obtain a conviction.  *Id.* at 166.  The Supreme Court reversed the lower court, holding that "the conviction of the [defendant] has been obtained by methods that offend the Due Process Clause."  *Id.* at 174.

Contrary to Paredes-Machado's argument, *Rochin* did not create distinct principles of fairness and decency.  Rather, the Court simply excluded unlawfully obtained evidence, noting that if police had forced words from the defendant's mouth, they would have been suppressed.  *Rochin*, 342 U.S. at 173 ("Coerced confessions offend the community's sense of fair play and decency.").  Notably, *Rochin* was decided before the Fourth Amendment's exclusionary rule was applied to the states; this result would be routine today under the Fourth Amendment.  *See United States v. Leon*, No. 09 CR 383-16, 2018 WL 4339374, at *6 (N.D. Ill. Sept. 11, 2018) (citing cases).  In sum, *Rochin* did not authorize dismissal of an indictment for post-offense conduct.

If Paredes-Machado sought suppression of evidence obtained illegally, *Rochin* would apply.  However, the only evidence that came from Paredes-Machado's arrest was a statement the government has agreed not to use.  Thus, there is no risk that Paredes-Machado will be convicted based on evidence obtained unconstitutionally.  *Rochin* has little applicability.  *See Leon*, 2018 WL 4339374, at *6.

*Russell*, an entrapment case, is not useful to Paredes-Machado either.  In that case, an undercover agent provided the defendant a chemical essential for manufacturing methamphetamine.  *Russell*, 411 U.S. at 424.  The defendant argued that, even though he may be predisposed to commit a crime (which is fatal to a typical

7

entrapment defense), he should have been acquitted because there was entrapment as a matter of law. The appellate court agreed; it held dismissal was necessary because there was "an intolerable degree of governmental participation in the criminal enterprise." *Id.* at 427. The Supreme Court reversed, concluding that the government conduct was "far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432.

But in discussing the degree of government conduct, and availability of the chemical without the assistance of the undercover agent, the Court recognized that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin* [], [but] the instant case is distinctly not of that breed." *Id.* at 431-32. Paredes-Machado relies on this *dicta* to claim that *Russell* "mandate[s]" dismissal for a violation of the principle of decency. This argument lacks merit.

In recognizing, without deciding, that there someday may be an instance where government conduct is so outrageous that due process principles would bar government prosecution, the *Russell* Court was discussing the government's participation in the underlying criminal activity. No Supreme Court or Sixth Circuit case law supports Paredes-Machado's claim that *Russell* holds "that dismissal is the proper remedy for an egregious violation of the principle of decency. . . ." [ECF No. 915, PageID.4853 (emphasis omitted)]. *See United States v. Miller*, 696 Fed. Appx. 696, 699 (6th Cir. 2017) ("[R]egardless of the propriety of the government action in this case,

8

the Sixth Circuit has not adopted the outrageous government conduct defense."). Indeed, other than referencing *Toscanino*, Paredes-Machado does not contest the government's assertion that in the almost 50 years since *Russell*, no case (including the 70+ cited by Paredes-Machado) has dismissed an indictment for a post-offense, post-indictment, and post-arrest violation of the principle of decency. And, as discussed below, the *Toscanino* court reversed the conviction but did not dismiss the indictment.

Notably, Paredes-Machado admitted that *Russell* was an entrapment case that "must be distinguished" from cases about shockingly abusive conduct. [ECF No. 885, PageID.4318-19]. Moreover, he acknowledged that the "analytical framework [from entrapment cases] . . . cannot be applied to 'shockingly abusive' government conduct in which a defendant is physically assaulted, as here." [*Id.*, PageID.4317-18]. *Russell* does not help Paredes-Machado.

Finally, the Second Circuit decision in *Toscanino* does not entitle Paredes-Machado to dismissal of the indictment, either.

Toscanino claimed he was being knocked unconscious with a gun, placed into a car, bound and blindfolded, and abducted from Uruguay. His abductors drove him to the Brazilian border. At one point during the drive, the abductor stopped the car and ordered Toscanino to get out. Toscanino was brought to an apparently secluded place and told to lie still, or he would be shot. *Toscanino*, 500 F.2d at 269. Although his blindfold prevented him from seeing, Toscanino could feel the barrel of the gun against his head and could hear the rumbling noises of what appeared to be a Uruguayan military convoy. *Id.* Once the noise of the convoy ended, the abductors placed Toscanino in another vehicle and took him across the border to Brazil. He was tortured

9

and interrogated there for seventeen days. *Id.* at 269-70. After this ordeal, Toscanino was drugged and placed on an American commercial flight. When Toscanino arrived in the United States, he was taken into custody by waiting United States law enforcement officials. *Id.* at 270.

The Second Circuit held that if Toscanino's allegations were true, due process would require the court to divest itself of jurisdiction and/or bar the government from prosecuting the defendant. *Id.* at 275-76. The Court reversed Toscanino's conviction and remanded the case for an evidentiary hearing to determine if the government's conduct was sufficiently outrageous to be in violation of due process requirements. *Id.* at 281.

The Sixth Circuit discussed *Toscanino* in *United States v. Pelaez*, 930 F.2d 520 (6th Cir. 1991). *Pelaez* did not accept or reject the *Toscanino* holding. However, in relevant part, the Court held that "[e]ven if *Toscanino* were a valid exception to *Ker–Frisbie*, its rationale is wholly inapplicable to the case at bar[,]" because, among other reasons, "Pelaez has not even alleged, much less demonstrated, that **his extradition** was accomplished through torture, brutality, or physical force." *Id.* at 525 (emphasis added).

In light of this, the Court finds that even if the Sixth Circuit recognized the outrageous government conduct defense as contemplated by *Toscanino*, the defense would not apply to Paredes-Machado because, although Paredes-Machado alleges he was tortured by Mexican officers post-arrest and pre-extradition, he does not allege that his arrest or extradition "was accomplished through torture, brutality, or physical force." *See Pelaez*, 930 F.2d at 525.

10

## IV. CONCLUSION

After a *de novo* review of the parts of the R&R to which Paredes-Machado objects, the Court finds that the magistrate judge applied and analyzed the case law correctly and properly concluded that Paredes-Machado is not entitled to dismissal of the indictment under the outrageous government conduct defense or the Fifth Amendment's Due Process Clause.

The Court **OVERRULES** Paredes-Machado's Objection [ECF No. 915] and **ADOPTS** Magistrate Judge Grand's R&R [ECF No. 910].

Paredes-Machado's motion to dismiss the indictment [ECF No. 885] is **DENIED**.

**IT IS ORDERED**.

                                            s/ Victoria A. Roberts  
                                            Victoria A. Roberts  
                                            United States District Judge

Dated: August 27, 2019